1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ROBERT TUNSTALL,                           No.  2:08-cv-3176 WBS KJN P

12              Plaintiff,

13        v.                                     ORDER and FINDINGS &
                                                 RECOMMENDATIONS
14   KNOWLES, et al.,

15              Defendants.

16

17   I.  Introduction

18        Plaintiff is a state prisoner, proceeding through appointed counsel.  Cross-motions for

19   summary judgment are before the court.  As set forth more fully below, the undersigned finds that

20   defendants' motion for summary judgment should be granted, and plaintiffs' motion should be

21   denied.

22   II.  Plaintiff's Pro Se Complaint

23        Plaintiff's verified complaint, filed December 31, 2008, contains the following

24   allegations.  Plaintiff alleges that he is hearing impaired and has suffered discrimination as a

25   result.  Plaintiff is totally medically disabled due to a chronic seizure disorder and therefore

26   cannot work around sharp objects.  For that reason, plaintiff does not qualify for any of the

27   vocational trade programs offered at California Medical Facility ("CMF"), and has not been able

28   to meet that program requirement for parole.  Plaintiff was denied access to sign language classes

                                                 1

1  by defendants, all of whom have the authority to make such classes available, which were once

2  offered at CMF.  Plaintiff is being denied access to sign language classes because he allegedly has

3  a G.E.D., and the institution claims that he received the G.E.D. in 1957, on a date when he was

4  twenty days old.  The communication difficulties plaintiff experiences affect not only his ability

5  to program and qualify for parole, but his participation in psychiatric groups and mental health

6  programs, as well as his ability to communicate about multiple medical issues that he has

7  secondary to brain surgery.  Plaintiff raises claims under the equal protection clause of the United

8  States Constitution, Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.

9  ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("RA").

10  III.  Procedural Background

11          This action was filed on December 31, 2008; plaintiff seeks injunctive relief and money

12  damages.  (ECF No. 1.)

13          On December 2, 2009, class counsel was requested to confirm whether or not plaintiff was

14  a member of the class in Coleman v. Wilson, Case No. 2:90-cv-0520 LKK (E.D. Cal.), or

15  Armstrong v. Davis, 4:94-2307-CW (N.D. Cal.).  (ECF No. 48.)  On December 4, 2009, class

16  action counsel confirmed that plaintiff is a member of the Coleman and Armstrong class action

17  lawsuits.  (ECF No. 49.)

18          On April 21, 2010, at the request of the court, staff counsel for J. Clark Kelso, the Federal

19  Receiver for the California state prison medical care system, provided a summary of plaintiff's

20  medical history, diagnosis and plan of care as detailed by the Receiver's Reviewing Physician

21  after reviewing plaintiff's medical file pursuant to the Receiver's standard review procedure

22  related to medical complaints and appeals.  (ECF No. 168-1.)

23          On September 7, 2010, defendants' motion to dismiss was granted in part and denied in

24  part.  (ECF No. 95.)  Plaintiff's request for prospective injunctive relief on his claims under the

25  ADA and RA were dismissed without prejudice to his right to seek relief as a member of the class

26  in Armstrong v. Davis; and defendants were required to answer plaintiff's claims under the ADA,

27  the RA, and the equal protection clause.  The district court adopted in full the findings and

28  ////

2

recommendations in which the court found plaintiff alleged a cognizable equal protection claim as a "class of one." (ECF No. 91 at 5:5-18.)

On April 27, 2011, defendants filed a motion for summary judgment. (ECF No. 139.) On February 1, 2012, the motion for summary judgment was denied without prejudice. (ECF No. 162.) On February 15, 2012, defendants renewed their motion for summary judgment. (ECF No. 163.) On July 25, 2013, the court noted that the Ninth Circuit's ruling in Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir. 2013), "may bear directly on issues at bar," ordered a mandatory settlement conference, and denied the motion for summary judgment without prejudice. (ECF No. 174 at 2-3.) Settlement conferences were held on October 3, 2013, and February 18, 2014, but the case did not settle. On March 6, 2014, the dispositive motion deadline was extended to April 17, 2014, and the parties were directed to address the application of Pride v. Correa, 719 F.3d 1130, 1138 (9th Cir. 2013). On April 17, 2014, defendants renewed their motion for summary judgment. (ECF No. 198.) On April 18, 2014, plaintiff filed a motion for partial summary judgment. (ECF No. 199.)

IV.  The Armstrong Remedial Plan

Armstrong v. Brown, Case No. C 94-2307 CW (N.D. Cal.) ("Armstrong"), is a class action concerning disability accommodations for prisoners and parolees in the California Department of Corrections and Rehabilitation ("CDCR"). The Armstrong "court ordered Remedial Plan," or "ARP," as amended January 3, 2001, requires the CDCR "to ensure that prisoners and parolees with disabilities are accessibly housed, that they are able to obtain and keep necessary assistive devices, and that they receive effective communication regarding accommodations." Armstrong v. Brown, No. 94-2307 CW (ECF No. 1974) (Order filed January 13, 2012).

The ARP provides:

> The Disability Placement Program (DPP) is the Department's set of plans, policies, and procedures to assure nondiscrimination against inmates/parolees with disabilities. The DPP applies to all of the Department's institutions/facilities, all programs that the Department provides or operates, and to all inmates who have disabilities that affect a major life activity whether or not the disabilities impact placement.

3

Although the program covers all inmates/parolees with disabilities, whether or not they require special placement or other accommodation, it is facilitated in part through "clustering" or designating accessible sites (designated facilities) for qualified inmates requiring special placement. Inmates with permanent mobility, hearing, vision, and speech impairments, or other disability or compound conditions severe enough to require special housing and programming, will be assigned to special placement in a designated DPP facility. Inmates with a permanent impairment of lesser severity, learning disability, or a kidney disability, may be assigned to any of the Department's institutions/facilities (designated DPP institutions or nondesignated DPP institutions) consistent with existing case factors.

(ECF No. 31-2 at 6.)  With regard to hearing impaired inmates, the ARP further provides:

C.2.  Permanent Hearing Impairments

Inmates . . . who are permanently deaf or who have a permanent hearing impairment so severe that they must rely on written communication, lip reading, or signing because their residual hearing, with aids, does not enable them either to communicate effectively or hear an emergency warning shall be designated as DPH.

D.3.  Permanent Hearing Impairments

Inmates . . . who have residual hearing at a functional level with hearing aids shall be designated as DNH.

E.  Effective Communication

1.  General

Reasonable accommodation shall be afforded inmates. . . with disabilities, e.g., hearing impaired, . . . to ensure equally effective communication with staff, other inmates, and, where applicable, the public.  Auxiliary aids which are reasonable, effective, and appropriate to the needs of the inmate. . . shall be provided when simple written or oral communication is not effective.  Such aids may include bilingual aides . . . qualified interpreters. . . sound amplification devices, . . . and signage.

2.  Communication Implicating Due Process and Delivery of Health Care

Because of the critical importance of communication involving due process or health care, the standard for equally effective communication is higher when these interests are involved. It is the obligation of CDC staff to provide effective communication under all circumstances, but the degree of accommodation that is required under these special circumstances shall be determined on a case-by-case basis and is subject to the following requirements:  . . . .

(ECF No. 31-2 at 8-10.)

4

1       A revised permanent injunction issued in 2002.  See <u>Armstrong v. Davis</u>, 275 F.3d 849,

2  858 (9th Cir. 2001).  On June 4, 2013, the district court confirmed that the Armstrong Remedial

3  Plan ("ARP") addressed effective communication for deaf inmates.  <u>Armstrong v. Brown</u>, 939

4  F.Supp.2d 1012, 1015 (N.D. Cal. June 4, 2013).

5  V.  <u>Defendants' Motion for Summary Judgment</u>

6       Defendants renewed their motion for summary judgment on April 17, 2014.  (ECF No.

7  198.)  After receiving an extension of time, plaintiff filed an opposition on January 16, 2015.

8  Defendants filed a reply on January 23, 2015, along with their objections to plaintiff's evidence.

9  Pursuant to the court's prior order, the court has reviewed plaintiff's prior filings in connection

10  with the motion.  (ECF No. 203 at 2, citing ECF Nos. 143, 147, & 165-67.)  Plaintiff's counsel

11  generally refers to medical records appended to "most of his pleadings," but cites to plaintiff's

12  motion for appointment of counsel (ECF No. 103); response to defendant's notice of errata to

13  motion to dismiss (ECF No. 34), and objection to denial of appointment of counsel (ECF No. 23)

14  in counsel's declaration signed April 17, 2012 (ECF No. 167), all of which the undersigned has

15  considered as well.

16       A.  <u>Legal Standard for Summary Judgment</u>

17       Summary judgment is appropriate when it is demonstrated that the standard set forth in

18  Federal Rule of Civil procedure 56 is met.  "The court shall grant summary judgment if the

19  movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

20  judgment as a matter of law."  Fed. R. Civ. P. 56(a).

21  
22  
23  
24  
> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

25  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.

26  56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need

27  only prove that there is an absence of evidence to support the non-moving party's case."  <u>Nursing</u>

28  <u>Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.)</u>, 627 F.3d 376,

1    387 (9th Cir. 2010) (citing <u>Celotex Corp.</u>, 477 U.S. at 325); <u>see also</u> Fed. R. Civ. P. 56 advisory

2    committee's notes to 2010 amendments (recognizing that "a party who does not have the trial

3    burden of production may rely on a showing that a party who does have the trial burden cannot

4    produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment

5    should be entered, after adequate time for discovery and upon motion, against a party who fails to

6    make a showing sufficient to establish the existence of an element essential to that party's case,

7    and on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322.

8    "[A] complete failure of proof concerning an essential element of the nonmoving party's case

9    necessarily renders all other facts immaterial."  <u>Id.</u> at 323.

10         Consequently, if the moving party meets its initial responsibility, the burden then shifts to

11   the opposing party to establish that a genuine issue as to any material fact actually exists.  <u>See</u>

12   <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

13   establish the existence of such a factual dispute, the opposing party may not rely upon the

14   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the

15   form of affidavits, and/or admissible discovery material in support of its contention that such a

16   dispute exists.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party

17   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

18   of the suit under the governing law, <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

19   (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

20   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return

21   a verdict for the nonmoving party, <u>see</u> <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436

22   (9th Cir. 1987), <u>overruled in part on other grounds</u>, <u>Hollinger v. Titan Capital Corp.</u>, 914 F.2d

23   1564, 1575 (9th Cir. 1990).

24         In the endeavor to establish the existence of a factual dispute, the opposing party need not

25   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

26   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

27   trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce

28   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

1  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

2  amendments).

3          In resolving a summary judgment motion, the court examines the pleadings, depositions,

4  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

5  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at

6  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

7  drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences

8  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

9  predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F.

10  Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

11  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

12  some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could

13  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

14  trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

15          Counsel was appointed to represent plaintiff on October 13, 2011, so no notice under

16  Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), or Klingele v. Eikenberry, 849

17  F.2d 409 (9th Cir. 1988), was required.

18          B.  Facts[1]

19          1.  At all times relevant to this action, plaintiff was in the custody of the CDCR, and

20  housed at CMF.

21          2.  At all times relevant to this action, defendant Kahle was Supervisor of Correctional

22  Education Programs at CMF.  (ECF No. 139-1 at 15: ¶ 1.)

23          3.  At all times relevant to this action, defendant Gonzalez was an Associate Warden at

24  CMF.  (ECF No. 139-1 at 18: ¶ 1.)

25  ////

26  _____

   [1]  For purposes of the instant motion for summary judgment, the court finds the following facts

27  undisputed.  Documents submitted as exhibits are considered to the extent they are relevant, and
   despite the fact that they are not authenticated because such documents could be admissible at

28  trial if authenticated.

7

4.  At all times relevant to this action, defendant Knowles was the Warden at CMF.  (ECF No. 139-1 at 21: ¶ 1.)

5.  At all times relevant to this action, defendant Grannis was the Chief of the Inmate Appeals Board (IAB) in Sacramento, California.  (ECF No. 139-1 at 24: ¶ 1.)

6.  On approximately April 2, 2008, plaintiff filed a Reasonable Modification or Accommodation Request (CDCR 1824), requesting that he be provided sign language classes "for effective communication."  (ECF No. 139-1 at 6-7.)

7.  On approximately April 22, 2008, defendant Kahle interviewed plaintiff relating to his CDCR 1824.  (ECF No. 139-1 at 7; 15-16: ¶ 2.)

8.  At the outset of the interview, it was apparent to defendant Kahle that plaintiff was able to hear and carry on a normal conversation, and was not deaf.  (ECF No. 139-1 at 15-16: ¶ 2.)

9.  Defendant Kahle informed plaintiff that sign language classes were available to inmates who were hearing-impaired to the level of being legally deaf, and for inmates who had been assigned to clerk positions in the prison that required knowledge of sign language, such as a teaching aide.  (ECF No. 139-1 at 7; 15-16: ¶ 2.)

10.  Because plaintiff was able to carry on a verbal conversation with defendant Kahle, defendant Kahle did not believe plaintiff required sign language classes to communicate.  (ECF No. 139-1 at 15-16: ¶ 2.)

11.  Because plaintiff was not assigned to a clerk position that required knowledge of sign language, such as a teaching aide, he was not eligible to receive sign language classes.  (ECF No. 139-1 at 15-16: ¶ 2.)

12.  To defendant Kahle's knowledge, sign language classes were not provided to anyone who, like plaintiff, could hear and carry on a normal conversation, and were not assigned a clerk position that required knowledge of sign language.  (ECF No. 139-1 at 16: ¶ 3.)

13.  The denial of plaintiff's CDCR 1824 request for sign language classes by defendant Kahle was reviewed by defendant Gonzalez.  (ECF No. 139-1 at 7; 19: ¶ 3.)

////

14.  The denial of CDCR 1824 request was approved by defendant Gonzalez at the First Level of Review because plaintiff failed to demonstrate to the reviewer of the appeal that he had a hearing impairment that required the accommodation of sign language classes for the purpose of acquiring a GED or vocational trade.  (ECF No. 139-1 at 19: ¶ 3.)

15.  Because it was apparent to defendant Gonzalez that defendant Kahle was able to interview plaintiff, and had made no notation regarding plaintiff's inability to communicate effectively through normal conversation, defendant Gonzalez approved the denial of the request for sign language classes because defendant Kahle acted appropriately on plaintiff's request. (ECF No. 139-1 at 19: ¶ 3.)

16.  Plaintiff appealed the denial of sign language classes to the second level of review. (ECF No. 139-1 at 9.)  It does not appear that plaintiff explained the reasons for seeking second level review.  (ECF Nos. 34 at 37; 139-1 at 9.)

17.  Plaintiff's appeal was denied at the second level of review, and was signed on defendant Knowles' behalf by non-defendant Kathleen Dickinson.  (ECF No. 139-1 at 21-22: ¶ 2.)

18.  Defendant Knowles did not review that appeal, and he was not made aware of plaintiff's request to be provided sign language classes.  (ECF No. 139-1 at 9; 11; 21-22: ¶ 2.)

19.  Plaintiff appealed the denial of the sign language classes to the Director's Level of Review.  (ECF No. 139-1 at 9-10.)

20.  Plaintiff's appeal was denied by defendant Grannis at the Director's Level of Review because plaintiff failed to demonstrate that he was not reasonably accommodated for his hearing impairment.  (ECF No. 139-1 at 12; 25: ¶ 3.)

21.  Specifically, the evidence presented to defendant Grannis demonstrated that plaintiff was able to communicate effectively, and the ARP did not require sign language classes for inmates who merely desired to learn sign language.  (ECF No. 139-1 at 12; 25: ¶ 3.)

22.  In addition, the evidence presented to defendant Grannis indicated that sign language classes were also provided for Inmate Teacher Aids so that they could tutor Disability Placement Program ("DPP") students who are legally deaf.  (ECF No. 139-1 at 12; 25: ¶ 3.)

23.  Since records showed that plaintiff was not legally deaf and could otherwise communicate effectively with the use of hearing aids and was not a tutor, it was determined by defendant Grannis that staff acted appropriately on plaintiff's request. (ECF No. 139-1 at 12; 25: ¶ 3.)

24.  At no time did defendant Kahle intentionally or knowingly deny plaintiff access to sign language classes due to his hearing impairment, or due to any other alleged disability.  (ECF No. 139-1 at 16: ¶ 4.)

25.  At no time did defendant Gonzalez intentionally or knowingly deny plaintiff access to sign language classes due to his hearing impairment, or due to any other alleged disability.  (ECF No. 139-1 at 19: ¶ 4.)

26.  At no time did defendant Knowles intentionally or knowingly deny plaintiff access to sign language classes due to his hearing impairment, or due to any other alleged disability.  (ECF No. 139-1 at 22: ¶ 3.)

27.  At no time did defendant Grannis intentionally or knowingly deny plaintiff access to sign language classes due to his hearing impairment, or due to any other alleged disability.  (ECF No. 139-1 at 25: ¶ 4.)

C.  The Parties' Positions

1.  First Round of Briefing[2]

Defendants contend that they are entitled to summary judgment because there is no evidence that defendants violated the ADA when they denied plaintiff's request to participate in sign language classes at CMF.  (ECF No. 139 at 6.)  Rather, defendants contend that plaintiff was denied access to sign language classes because he could hear and carry on a normal conversation. Defendants argue that there is no evidence that any defendant believed or had knowledge that plaintiff had a hearing impairment that took away his ability to communicate effectively and then, based on such knowledge, failed to provide him with sign language classes.  (ECF No. 139 at 8.)

---

[2] Although many of the arguments in the various rounds of briefing are duplicative, the undersigned believes it appropriate to address the arguments made in each round of briefing in light of the number of times plaintiff has been provided an opportunity to oppose summary judgment.

1    Defendants contend that plaintiff's equal protection claim fails because there is no

2    evidence that plaintiff was treated differently from others similarly situated because no one in

3    plaintiff's position was given access to sign language classes.  Rather, only legally deaf and

4    inmates assigned to clerk positions that required knowledge of sign language, such as a teaching

5    aide, were permitted to attend sign classes.  Moreover, defendants contend there was a rational

6    basis for the classification because sign language classes were provided to inmates who actually

7    needed them to communicate, either because they were legally deaf, or because they were

8    assigned a position that required it, such as a teaching aide.  Defendants contend such limits are

9    rational given the well-known budgetary constraints of the state of California.  (ECF No. 139 at

10    9.)

11    Finally, defendants contend they are entitled to qualified immunity because a reasonable

12    person in each defendant's position could have reasonably believed that denying sign language

13    classes to an inmate who is not legally deaf, was capable of carrying on a normal conversation,

14    and who was not assigned to a position that required knowledge of sign language, was unlawful.

15    (ECF No. 139 at 10.)

16    In his unverified opposition filed when he was pro se, plaintiff refers to his CDCR 1824

17    form and contends that Dr. Alexander confirms plaintiff has a hearing impairment, and that the

18    Inmate/Parolee Disability Verification form CDC-1845, signed September 3, 2002, verifies that

19    plaintiff is eligible for sign language classes.  (ECF No. 143 at 1, citing No. 143 at 22.)  Plaintiff

20    contends that defendants were aware that plaintiff did not wear hearing aids, and that plaintiff

21    cannot work around sharp objects or hot surfaces, or use ladders due to his chronic seizure

22    disorder.  (ECF No. 143 at 2.)  Plaintiff contends that defendants allowed a non-hearing-impaired

23    inmate, Michael Beers, to take sign language training.  (ECF No. 143 at 3.)  Plaintiff contends

24    that defendant Kahle, supervisor of Education Programs at CMF, denied plaintiff the same

25    opportunity to learn a vocational trade that is suitable to plaintiff's disabilities.  (ECF No. 143 at

26    6.)  Plaintiff argues that defendant Kahle was aware that plaintiff was tone sensitive, and that loud

27    noises, such as loud talking, cause plaintiff to be in pain and become aggressive, and that plaintiff

28    has "Sound Processing Distortion."  (ECF No. 143 at 7.)  Plaintiff argues that defendant

1   Gonzalez, as Associate Warden, has the authority to authorize plaintiff to attend sign language

2   classes.  Plaintiff contends that defendant Gonzalez intentionally discriminated against plaintiff

3   by allowing non-hearing-impaired inmates to participate in sign language classes.  (ECF No. 143

4   at 8.)  Plaintiff acknowledges defendant Warden Knowles' declaration that he was acting warden,

5   but did not review plaintiff's appeal, which was signed on the warden's behalf by Kathleen

6   Dickinson, and was not made aware of plaintiff's request for sign language training.  (ECF No.

7   143 at 9.)  However, plaintiff contends that defendant Knowles is in charge of the oversight of the

8   prison as well as the actions of his subordinates.  (ECF No. 143 at 9.)  Plaintiff states that he

9   "does not communicate effectively" with his peers or correctional staff, and has "Sound

10   Processing Distortion" as a result of the removal of a brain tumor.  (ECF No. 143 at 10.)

11   As to defendant Grannis, plaintiff contends that Grannis failed to investigate plaintiff's

12   claim that he was being discriminated against, knowing that plaintiff was hearing-impaired, and

13   intentionally violated plaintiff's constitutional rights when she failed to allow plaintiff to attend

14   sign language classes, knowing that non-hearing-impaired inmates were permitted to take such

15   classes.  (ECF No. 143 at 11.)

16   In reply, defendants contend that plaintiff failed to demonstrate a disputed issue of

17   material fact exists.  Defendants contend that the evidence shows that plaintiff was not excluded

18   from sign language classes due to his disability, but rather because he could hear and carry on a

19   normal conversation.  Further, defendants point out that the CDCR 1824 form was not signed

20   until July 7, 2008 (ECF No. 143 at 14), after plaintiff's request for sign language classes were

21   denied at all three administrative levels by defendants Kahle, Gonzalez, and Grannis.  (ECF No.

22   146 at 3.)  Defendants argue that there is no evidence that plaintiff ever requested, or was denied,

23   access to sign language classes from defendants after he received a response to the CDCR 1824.

24   (ECF No. 146 at 3.)  Moreover, defendants note that the response to plaintiff's CDCR 1824

25   clarifies that the "Armstrong decision governing ADA services does not mandate such

26   instruction, but the CMF currently provides it as a support to the education program for inmates

27   who need this support."  (ECF No. 146 at 3, quoting ECF No. 143 at 17.)  Defendants argue that

28   this is consistent with their evidence that sign language classes were available to deaf inmates.

12

1    Finally, defendants argue that plaintiff does not dispute the fact that he was able to carry on a

2    normal conversation with defendant Kahle.  (ECF No. 146 at 3.)

3         As to plaintiff's equal protection claim, defendants argue that plaintiff presents no

4    evidence that at the time he presented his request for sign language classes to defendants,

5    similarly-situated individuals were given access to classes.  Defendants contend that plaintiff

6    failed to refute their evidence that sign language classes were available to deaf inmates and for

7    inmates assigned to positions requiring knowledge of sign language.  (ECF No. 146 at 4.)

8    Defendants maintain that plaintiff's claim concerning Michael Beers is not supported by

9    foundational evidence; plaintiff provided no evidence that Beers was not hearing impaired or that

10   he was not assigned to a clerk position that required the knowledge of sign language.  Thus,

11   defendants argue that plaintiff fails to show Michael Beers was similarly situated to plaintiff at

12   the relevant time.

13        Finally, defendants contend that because plaintiff's opposition provides no admissible

14   evidence to dispute the facts argued in support of qualified immunity, they are entitled to

15   qualified immunity.  (ECF No. 146 at 5.)

16        In his unverified sur-reply, filed pro se, plaintiff renews his argument that his hearing

17   impairment is verified, and that he is eligible for sign language training.  (ECF No. 147 at 1-3.)

18   Plaintiff contends that Dr. Silbaugh's response verifies that sign language training would be a

19   significant benefit for group therapy.  (ECF No. 147 at 3, citing No. 143 at 17.)  Plaintiff disputes

20   the fact that he was able to carry on a normal conversation with defendant Kahle.  (ECF No. 147

21   at 3:15-17.)  Plaintiff contends that the CDC 1845 form, signed September 24, 2002, confirms

22   that plaintiff is permanently hearing impaired.  (ECF No. 147 at 3, citing No. 143 at 22.)  Plaintiff

23   reiterates his argument that defendants violated the Equal Protection Clause by denying plaintiff

24   access to sign language classes when each defendant knew that non-hearing-impaired inmates,

25   like Michael Beers, were permitted to attend such classes.  (ECF No. 147 at 4.)  Further, plaintiff

26   argues that defendants are trained in policies, regulations, court decisions, statutes, and law.

27   ////

28   ////

13

1          2. Second Round of Briefing

2          In their February 15, 2012 renewed motion, defendants incorporated their prior briefing.

3   (ECF No. 163.)  By this time, counsel was appointed for plaintiff, who filed the following

4   response.  (ECF No. 165.)  Plaintiff contends that he suffers from profound hearing

5   comprehension problems; that his hearing impairment is not assisted by hearing aids or methods

6   that amplify sound, but that his "disorder involves a complex impairment of sound and

7   comprehension, which is a function of the brain tumor and resultant brain resection."  (ECF No.

8   165 at 3.)  Plaintiff contends that it is clear that he is disabled within the meaning of the ADA,

9   and that the issues before the court are whether or not plaintiff was denied access to programs or

10  benefits by reason of his disability; whether or not he can request injunctive relief; and whether or

11  not the defendants may "hide behind the injunction issued by this Court in Armstrong without

12  complying with the Court's earlier rulings."  (ECF No. 165 at 3.)

13         Plaintiff perceives defendants' argument to be that plaintiff is not being denied services

14  that would relate directly to his impairment, but he's being denied them because they are

15  designed as educational programs.  (ECF No. 165 at 3.)  Plaintiff contends that such circular

16  argument is pre-textual because plaintiff's seizure disorder should not preclude him from being in

17  a classroom setting.  (ECF No. 165 at 3.)  Plaintiff points out that defendants relied on the fact

18  that plaintiff is not "totally deaf," or "legally deaf," to deny him access to sign language classes.

19  (ECF No. 165 at 4.)  Plaintiff argues that he has been denied access to any number of services due

20  to his disabilities, and the personal harm he has suffered has been global and daily by a lack of

21  accommodation.  Plaintiff is "isolated, depressed, and unable to participate meaningfully in

22  almost any daily activities that can be imagined."  (ECF No. 165 at 4.)  Plaintiff argues that sign

23  language is his solution to his inability to communicate.  (ECF No. 165 at 5.)

24         As to plaintiff's equal protection claim, plaintiff contends that defendants' argument that

25  plaintiff is not handicapped "enough" and doesn't have a job that needs alternative

26  communication skills is specious, and argues that it would be cheaper to provide plaintiff sign

27  language classes than to litigate this action over the last four years.  (ECF No. 165 at 5.)

28  ////

14

1    Finally, plaintiff argues that his individual claim for injunctive relief should not be barred

2    by the class action in <u>Armstrong</u>; rather, plaintiff contends this court has jurisdiction to order

3    plaintiff relief based on the current injunction in <u>Armstrong</u>.  (ECF No. 165 at 6.)  The principal

4    relief for which plaintiff argues is an order permitting him to attend sign language classes.  (ECF

5    No. 165 at 6.)

6    The response by plaintiff's counsel was not accompanied by a declaration by plaintiff.

7    In reply, defendants argue that plaintiff's injunctive relief claims were previously

8    dismissed because they must be pursued in <u>Armstrong</u> and cannot be reargued on summary

9    judgment.  Defendants again object that plaintiff failed to identify genuine factual disputes that

10    would preclude summary judgment, and failed to provide specific citations to admissible

11    evidence in support of his arguments.  (ECF No. 168 at 2.)

12    Defendants contend that plaintiff cannot state an ADA claim because he was not denied

13    admission to sign language classes because of his hearing impairment.  Defendants provide a

14    copy of the April 21, 2010 Federal Receiver's Report submitted to the previously-assigned

15    magistrate judge which states, in pertinent part:

16    > [Plaintiff] had a benign brain tumor for which he underwent a right
17    > posterior temporal craniotomy to remove the tumor in 2002. . . .  He
18    > subsequently complained intermittently of difficulty hearing and the
19    > distortion of sound. . . .  In December 2007, a specialist found that
20    > [plaintiff] might have auditory association problems with the
21    > distortion of sounds, which were presumed to be related to the
22    > surgery, and which would not be unexpected given the surgery's
23    > location. . . .  [Plaintiff] was provided hearing aids, which likely
      > would have limited effectiveness if he had sound distortion
      > problems. . . .  However, his treating physicians have found that
      > [plaintiff] converses with staff and other inmates without problem
      > and has no receptive or expressive language difficulties that would
      > require sign language. . . .

23    (ECF No. 168 at 3, quoting No. 168-1 at 203.)  Defendants argue that doctors have not ordered

24    sign language classes as a treatment for a medical problem, and plaintiff does not allege a

25    deliberate indifference to a serious medical need.  (ECF No. 168 at 3.)  In addition, defendants

26    contend that prisoners have no substantive constitutional right to a prison job or to educational

27    opportunities.  (ECF No. 168 at 3-4.)  Thus, defendants argue that the only remaining question is

28    whether plaintiff is entitled to damages because defendants discriminated against plaintiff on the

1   basis of a hearing impairment by not giving him an educational assignment to attend sign

2   language classes in violation of the ADA.  Defendants contend that only prisoners who were

3   legally deaf or who had work assignments that required the use of sign language were eligible for

4   sign language classes.  Defendants contend that plaintiff is not legally deaf, and did not have a

5   work assignment that required knowledge of sign language.  (ECF No. 168 at 4.)

6        Defendants point out that plaintiff disputes none of these facts, but merely quarrels with

7   the admissions criteria for the sign language classes.  Defendants contend that it is undisputed that

8   plaintiff has hearing aids and that prison staff who have dealt with him and physicians who have

9   treated him have found that he has no receptive or expressive language difficulties that require

10  sign language.  (ECF No. 168 at 4, citing UDFs 8, 11, 22 & ECF No. 168-1 at 2-3 (Federal

11  Receiver's Report).)  Defendants argue that plaintiff's claim that sign language will allow him to

12  understand and communicate more effectively is unsupported by any evidence, and that plaintiff

13  adduced no evidence that he cannot understand and process information auditorily, but that he can

14  only do so visually through sign language, or that he is unable to communicate information

15  received auditorily by spoken word.  (ECF No. 168 at 4.)  Defendants note that prison staff and

16  inmates are not trained in sign language, so plaintiff's argument that sign language will enable

17  him to communicate more effectively, rather than talking and writing to them, as he does now,

18  "makes little . . . sense."  (ECF No. 168 at 5.)

19       Finally, defendants argue that plaintiff is not entitled to damages under Title II of the

20  ADA because it is undisputed that he was not admitted to sign language classes because he was

21  not legally deaf and did not have a work assignment that required such classes, and there is no

22  evidence that defendants intended to exclude him from the program because of his disability or

23  that they knew that harm to plaintiff's rights under the ADA were likely.  Defendants claim that it

24  is undisputed that defendants and plaintiff's treating physicians felt plaintiff was able to

25  effectively receive information and communicate without sign language.  (ECF No. 168 at 5,

26  citing UDF 8, 11, 22 & ECF No. 168-1 at 2-3 (Federal Receiver's Report).)

27  ////

28  ////

16

1      3. <u>Third Round of Briefing</u>

2          On April 17, 2014, defendants renewed their motion for summary judgment, incorporating

3  their prior briefing, and providing the following supplemental briefing.  (ECF No. 198.)

4          Defendants contend that <u>Pride v. Correa</u>, 719 F.3d 1130, 1138 (9th Cir. 2013), is

5  inapplicable to the instant case for the following reasons:  First, defendants contend <u>Pride</u> is

6  distinguishable because in <u>Pride</u>, the inmate's claim concerned only his individual medical care,

7  and was not encompassed in the <u>Plata</u> class action which sought systemic reform of medical care.

8  (ECF No. 198 at 2-3.)  In <u>Pride</u>, defendants argue that the Ninth Circuit found that under

9  <u>Crawford v. Bell</u>, 599 F.2d 890 (9th Cir. 1979), a district court may properly dismiss portions of

10  an individual suit that are duplicative of a pending class action in which the plaintiff is a class

11  member.  <u>Pride</u>, at 1134.  The Ninth Circuit found that the <u>Plata</u> class action sought systemic

12  reform of medical care which did not preclude an inmate's independent claim for injunctive relief

13  based solely on his own behalf for specific medical treatment denied to him.  Defendants argue

14  that the holding in <u>Pride</u> is limited to claims for injunctive relief for medical care brought by a

15  member of the <u>Plata</u> class and does not change the holding in <u>Crawford</u>.

16          Second, defendants argue that plaintiff's injunctive relief claims are duplicative of the

17  <u>Armstrong</u> class action because the class action was based upon violations of the ADA and RA,

18  and the class includes present and future hearing impaired prisoners in CDCR custody.  (ECF No.

19  198 at 4.)  After finding that the CDCR employees violated the ADA, on September 20, 1996, the

20  court issued the Court-Ordered Remedial Plan requiring implementation of a Disability

21  Placement Plan ("DPP").  (ECF No. 198 at 4, citing ECF No. 31-1 at 2-8.)  On January 8, 1999,

22  the court issued an Armstrong Remedial Plan ("ARP") (ECF No. 31-1 at 10-46), which was

23  amended on January 3, 2001 (ECF No. 31-2).  Defendants contend that the ARP, which covers

24  hearing-impaired inmates, prohibits their exclusion from CDCR services, programs or activities

25  by reason of such disability as well as prohibits discrimination based on such disability.  (ECF

26  No. 198 at 4.)  Moreover, defendants argue that the ARP contains specific provisions for

27  "reasonable accommodation" to "ensure equally effective communication" as well as

28  "communication implicating due process and delivery of health care."  (<u>Id.</u>, quoting ECF No. 31-

17

1    2 at 6.)  Further, defendants contend that the ARP remains in effect based on the March 21, 2001

2    permanent injunction in which the court in <u>Armstrong</u> retained jurisdiction.  (ECF No. 198 at 4,

3    citing ECF No. 31-4 at 4-5.)

4        Defendants argue that plaintiff's claims are duplicative of <u>Armstrong</u> because he is

5    hearing impaired, and, like the prisoners in <u>Armstrong</u>, seeks injunctive relief under the ADA and

6    RA.  (ECF No. 198 at 3, 4.)  Defendants contend that plaintiff's allegations that defendants

7    discriminated against him by denying him sign language classes because he is hearing impaired

8    and needs such classes for effective communication, are duplicative of the <u>Armstrong</u> class action

9    because plaintiff is effectively challenging the policy governing who is permitted to enroll in sign

10   language classes under the ADA.  (ECF No. 198 at 3.)  However, defendants contend that

11   because such policy is provided for in the ARP, plaintiff's request for injunctive relief under the

12   ADA and RA for sign language to accommodate his hearing impairment for effective

13   communication was properly dismissed by the court as barred under <u>Armstrong</u>.  (ECF No. 198 at

14   5.)  Defendants rely on <u>Crayton v. Terhune</u>, 2002 WL 31093590 (N.D. Cal. 2002) (dismissing

15   inmate's request for injunctive relief and holding that because <u>Crayton</u> is an <u>Armstrong</u> class

16   member, and his request based on the ADA/RA fell squarely under <u>Armstrong</u>, he must pursue

17   his request via the consent decree or through class counsel); and <u>Stingham v. Lee</u>, 2008 WL

18   2880496, *7-10 (E.D. Cal. 2008) (granting summary judgment on injunctive relief request based

19   on ADA in the form of a medical chrono permitting plaintiff to receive a diabetic test before the

20   rest of the housing unit released for meals).  (ECF No. 198 at 5.)

21       Third, defendants contend that plaintiff's injunctive relief claim is now moot because

22   plaintiff is no longer housed at CMF.  (ECF No. 198 at 5-6.)  Because plaintiff was recently

23   transferred to the California Health Care Facility ("CHCF"), he is no longer subject to the denial

24   of sign language classes by defendants at CMF, and defendants argue that plaintiff provided no

25   evidence that he has subsequently requested sign language classes or been denied such classes.

26       In response, plaintiff argues that both <u>Stingham</u> and <u>Crayton</u> were decided before <u>Pride</u>,

27   "and to the extent that their factual matrix is the same as <u>Pride</u>, they would presumably be

28   decided according to the [Ninth] Circuit's direction in <u>Pride</u>."  (ECF No. 206 at 3.)  Plaintiff

1   argues that Pride is applicable by analogy and supports plaintiff's request for injunctive relief

2   because the overall injunction requiring the CDCR to improve their medical care to inmates does

3   not preclude an individual inmate from seeking an order to provide care in a specific case.  (ECF

4   No. 206 at 3.)  Plaintiff argues that "triable issues of fact exist on the question of deliberate

5   indifference to plaintiff's needs both medical and non-medical when based on the 'medical

6   opinion' of an Assistant Warden."  (ECF No. 206 at 4.)  Plaintiff contends that defendants' make

7   a circular argument that plaintiff is not being denied services related to his impairment because

8   the sign language classes were designed as educational programs, and plaintiff has his GED and a

9   seizure disorder, which plaintiff argues is "pre-textual and absurd."  (ECF No. 206 at 4.)  Plaintiff

10  rebuts defendants' argument that plaintiff is not totally or legally deaf by noting that

11  documentation at CHCF reflects that plaintiff has a "hearing disability with distortion,

12  photophobia, and some other medical conditions some related to the post-craniotomy problems

13  and some of which are not related to either [plaintiff's] brain tumors nor his needs for

14  accommodation for medical services and hearing services."  (ECF No. 206 at 4, citing ECF No.

15  206-1 at 1-5.)  Plaintiff argues that his disabilities are complex and related to a brain tumor,

16  seizure disorder and the resulting brain surgeries.  Plaintiff views the sign language classes as his

17  solution to his underlying communication problem.  Plaintiff contends that he needs

18  accommodation under the ADA/RA for a communication disability, but that the CDCR has

19  consistently denied such services to him.  (ECF No. 206 at 5.)  Plaintiff argues that he has been

20  transferred at least four times during the pendency of this action, and

21
22
23
24
25
26

the issues, the refusals, and the complete disregard for any attempt
at complying with the law, the Armstrong Injunction, has been a
constant across all of the correctional institutions he has been in.
There have been promises of available classes, then the person who
was teaching the classes was told not to do so any more.  The move
to the [CHCF] initially came with a promise of hiring a person who
could teach sign language, but the most recent decision has been
that the [CDCR] was not going to hire a person to teach sign
language and even if they were, [plaintiff] would not be eligible for
sign language classes whether an instructor was available or not.

27  (ECF No. 206 at 5.)  Plaintiff contends that if the court finds plaintiff's sole remedy is under

28  Armstrong, the court should order the institution, under the auspices of the Armstrong injunction,

19

1    to rectify their denial of plaintiff's right to access sign language classes.  (ECF No. 206 at 8.)

2            Plaintiff argues that his request for injunctive relief should not be dismissed as moot

3    because the damages and losses incurred persist to date, and argues that all four of the

4    correctional institutions[3] and their respective authorities should be added to this case.  Plaintiff

5    contends that dismissal on mootness grounds is not appropriate because plaintiff is still subject to

6    the denial of sign language classes and "the unconstitutional policies" no matter to which prison

7    he might be transferred.  (ECF No. 206 at 6.)[4]  Plaintiff contends that plaintiff's communication

8    and understanding problem is broader in scope than total deafness or the more common hearing

9    impairment affecting the nerve receptors or auditory canal problems resulting in deafness that can

10   be helped with hearing aids.  (ECF No. 206 at 6.)  Plaintiff contends he has been left to his own

11   devices to address his communication dilemma, and that the denial of sign language classes

12   deprives him of an ability to effectively communicate with staff, impacts his ability to have

13   vocational training, to access other educational opportunities or to comply with AA or NA

14   attendance.  Such denial has resulted in write-ups for behavioral problems, negative evaluations,

15   an inability to participate in AA or NA, and an inability to consistently or quickly respond to

16   prison staff.  (ECF No. 206 at 7.)

17           Plaintiff recounts defendants' position that plaintiff is not handicapped "enough" to have

18   sign language classes, and that budgetary constraints are a rational basis for the policy governing

19   access to such classes.  Plaintiff contends that such argument is specious, arguing it would be

20   cheaper to provide the sign language classes to plaintiff than to litigate the instant action the past

21   six years.  (ECF No. 206 at 7.)

22           With regard to defendants' "uncontested" facts based on defendant Kahle's expertise,

23   plaintiff argues that there is no evidence that defendant Kahle has any medical training, education

24   _____

25   [3]  Since the filing of this action in 2008, plaintiff has been housed at CMF, Folsom Prison ("Old
     Folsom"), California State Prison, Sacramento ("New Folsom"), and CHCF in Stockton.  (ECF
26   No. 206 at 5-6 n.1.)

27   [4]  Plaintiff also includes argument concerning his alleged wrongful housing in a dorm ward.
     (ECF No. 206 at 6.)  However, the instant complaint solely concerns plaintiff's access to sign
28   language classes based on a violation of the ADA/RA and plaintiff's equal protection rights.

1    or expertise of any kind.  (ECF No. 206 at 8.)  Moreover, defendant Kathle's determination that

2    plaintiff did not require sign language because plaintiff could "carry on a normal conversation"

3    was reviewed by defendant Gonzalez who affirmed Kahle's denial, and subsequently reviewed by

4    defendants Dickinson and Grannis, none of whom have any medical expertise or expertise in

5    brain damage, neuro-audiology, or "anything remotely appropriate for evaluating" plaintiff's

6    medical needs.  (ECF No. 206 at 9.)  Plaintiff provides CDCR documents which he contends

7    reflect that prison medical personnel have all recognized plaintiff suffers from a

8    hearing/communication problem, and each clearly state plaintiff is a person with a disability, and

9    was so found by medical personnel with qualifications to make such assessment.  (ECF No. 206

10   at 9, citing ECF No. 206-1.)  By contrast, plaintiff's access to sign language classes was denied

11   by non-medical prison officials, because defendant Kahle found plaintiff "could hear and carry on

12   a normal conversation."  (ECF No. 206 at 9.)  Plaintiff contends that defendant Kahle's expertise

13   in corrections does not equip him to make such determination, which plaintiff argues poses

14   questions of fact for the jury:  "Is the determination that [plaintiff] not needing any health services

15   adequate when made by a non-medical professional?  Can the State deny services to a prisoner on

16   the basis that he's not disabled when the determination that he's not disabled is made by a person

17   without any medical expertise of any kind?"  (ECF No. 206 at 9.)

18          With regard to damages, plaintiff disputes defendants' conclusion that because defendant

19   Kahle decided plaintiff did not have a disability, that everything that flowed from that decision

20   was proper, and plaintiff was not damaged and recovers nothing.  Assuming, *arguendo*, that

21   defendant Kahle was qualified to make a medical determination, plaintiff argues that the jury

22   must decide whether plaintiff had an impairment as outlined by the ADA and RA.  Plaintiff

23   argues that the evidence reflects that plaintiff is a person with a disability and that defendants'

24   belief that plaintiff is not a person with a disability is based solely on the opinion of non-medical

25   prison management.  (ECF No. 206 at 10.)  Plaintiff argues that it is up for the jury to determine

26   whether plaintiff was harmed by the state's refusal to allow him access to an alternate means of

27   communication and if so, what are the damages.  (ECF No. 206 at 7.)

28   ////

1    Finally, plaintiff contends that there is "ample evidence of deliberate indifference on the

2    part of the State," citing "prison documents, repeated requests for accommodation, repeated

3    denials and testimony by [plaintiff's] medical providers, his wife Mary Tunstall, and prison

4    personnel," as well as "nine years of litigation through 4 prison administrations to try to get sign

5    language classes." (ECF No. 206 at 10.) Plaintiff argues that resolution lies with the jury, not on

6    summary judgment. (Id.)

7    Once again, this opposition was not accompanied by a declaration from plaintiff.

8    In reply, defendants argue that plaintiff's opposition is procedurally defective and

9    unsupported by admissible evidence. (ECF No. 209 at 2.) Defendants note that plaintiff failed to

10   reproduce defendants' undisputed facts, admit those that are undisputed or deny those that are

11   disputed, all in violation of Local Rule 260(b). Moreover, defendants point out that plaintiff

12   makes factual assertions without pointing to specific evidence in support, in violation of Rule

13   56(c)(1)(A) of the Federal Rules of Civil Procedure. (ECF No. 209 at 3.) Although plaintiff

14   provided a laundry list of alleged "ample evidence" (ECF No. 206 at 10), defendants note that

15   plaintiff failed to identify where in the court record such evidence is located, and even if it is

16   located in the record. (ECF No 209 at 3.)

17   Defendants reiterate their position that Pride does not apply to this action because

18   plaintiff's claims are duplicative of the Armstrong class action. Defendants argue that plaintiff's

19   individual claim for injunctive relief is duplicative of the Armstrong class action because he seeks

20   an order permitting him to attend sign language classes on the basis that he needs the sign

21   language classes for effective communication, "effectively challenging the policy governing who

22   is eligible for the sign language classes under the ADA." (ECF No. 209 at 4.) Defendants

23   contend that "the Armstrong remedial order, which addressed alleged violations of the ADA and

24   RA, covers hearing-impaired inmates and contains specific provisions for reasonable

25   accommodation to 'ensure equally effective communication.'" (ECF No. 209 at 4, citing ECF

26   No. 31 at 4 (ARP).)

27   But even if the court revived plaintiff's injunctive relief claim under Pride, defendants

28   contend that such claim is moot because plaintiff has been transferred to CHCF. (ECF No. 209 at

22

4.)  Defendants note that plaintiff failed to submit admissible evidence that he is still being denied sign language classes at CHCF, but that even if so, there is no evidence that defendants, who are employed at CMF in Vacaville, have the ability to accommodate prisoners at CHCF in Stockton.

Defendants repeat that they are entitled to summary judgment on plaintiff's ADA claim. Defendants note that the exhibits relied on by plaintiff in the current opposition are all dated several years after the alleged 2008 violation.  Thus, defendants argue that such exhibits fail to create a disputed fact as to whether plaintiff was eligible for classes at the time defendants denied the request in 2008.  (ECF No. 209 at 5.)  Despite plaintiff's extensive arguments concerning defendants' lack of medical expertise, defendants do not contend that they possess medical expertise and point out that this case is not about accommodating a serious medical need.  (ECF No. 209 at 5.)  Moreover, defendants note that plaintiff produced no evidence that any medical doctor has ordered sign language classes as treatment for plaintiff.

Defendants contend that plaintiff is attempting to muddle the issue by asserting that defendants have determined that plaintiff "is not a person with a disability."  (ECF No. 209 at 5, quoting ECF No. 206 at 9.)  Defendants do not contend that plaintiff lacks a disability, but that is not the issue before the court.  "Rather, the issue is whether defendants denied plaintiff sign language classes *because of* his disability."  (ECF No. 206 at 9, citing Weinreich v. Los Angeles County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997) (plaintiff proceeding under Title II of the ADA must prove that the exclusion from participation in the program was solely by reason of his disability).)  Defendants argue that it is undisputed that defendants did not deny plaintiff sign language classes due to his hearing impairment.  (ECF No. 206 at 10.)  Rather, only prisoners who were legally deaf or who had a work assignment that required sign language skills were eligible for sign language classes.  Moreover, defendants contend the evidence shows that defendants excluded plaintiff because he could hear and carry on a normal verbal conversation. (ECF No. 206 at 10.)  Thus, plaintiff did not qualify for the benefit sought.

Defendants argues that plaintiff presents no evidence that he cannot understand and process information auditorily, or that he can only do so visually through sign language, or that he is unable to communicate information received auditorily by spoken word.  (ECF No. 206 at 10.)

23

Because prison staff and inmates are not trained in sign language, defendants contend that plaintiff's argument that sign language will enable plaintiff to communicate more effectively than by talking and writing to them, as he does now, "is nonsensical."  (ECF No. 206 at 10.)

Defendants argue that plaintiff is not entitled to damages under the ADA because he adduced no evidence that defendants intentionally discriminated against him.  In order to demonstrate intentional discrimination, defendants argue that plaintiff must demonstrate "deliberate indifference."  (Id.)  Defendants contend that plaintiff's generic reference to "ample evidence of deliberate indifference," without specific record cites, is insufficient to demonstrate a genuine dispute of fact exists that defendants intentionally discriminated against him.

With regard to plaintiff's equal protection claim, defendants contend that there is no evidence that plaintiff was treated differently than persons similarly situated to him (not legally deaf and not assigned to a work assignment requiring knowledge of sign language).  Rather, defendants argue that the undisputed evidence shows that sign language classes were available only to inmates who were hearing impaired to the level of being legally deaf and for inmates who had work assignments requiring sign language skills.  Defendants contend that plaintiff's argument addressing only the rational basis element of this claim is insufficient to show defendants are not entitled to summary judgment.  (ECF No. 209 at 7.)

Finally, defendants contend that because plaintiff failed to address the issue of qualified immunity, such argument is waived.  (ECF No. 209 at 7.)  But in any event, defendants argue that they are entitled to qualified immunity because no reasonable state official would find that denying sign language classes to an individual who is not legally deaf, was capable of carrying on a verbal conversation, and who did not have a work assignment that required the knowledge of sign language, was unlawful.  (ECF No. 209 at 8.)

////

////

////

////

////

1    D. <u>Plaintiff's Evidence</u>[5]

2        On September 3, 2002, Dr. Torruella completed an Inmate Disability Verification form,

3    and in the section for "Disabilities Impacting Placement," checked the box:

4            Permanently Deaf/Hearing Impaired -- DPH

5            So severe they must rely on written communication, lip reading or
             signing as their residual hearing, with aids, will not enable them to
6            hear an emergency warning, or effectively communicate.

7    (ECF No. 23 at 29.)  Other impacting placement information noted was plaintiff's medical history

8    of post brain surgery, resulting in him suffering "near continual seizures in spite of suppressive

9    medications," and "Not suitable or safe for general population housing."  (ECF No. 23 at 29.)

10        On February 2, 2004, plaintiff filed a notice and request for reasonable accommodation,

11   form BPT 1073, in which he sought accommodation for effective communication and/or access.

12   (ECF No. 23 at 22.)  Plaintiff claimed, *inter alia*, that his disability included hearing and

13   understanding/learning, and asked for help with reading and understanding at his parole hearing.

14   (ECF No. 23 at 22.)

15        On June 16, 2004, plaintiff was issued a recommendation for adaptive support, finding

16   that plaintiff must always have a staff assistant in disciplinary hearings, classification committee

17   hearings, and in all contacts involving the use of a CDC Form 114-D (administrative segregation

18   reviews and hearings), by L. Geiger, Psychologist at CMF.  (ECF No. 34 at 52.)

19        In the September 17, 2004 progress notes, plaintiff was noted as "hard of hearing."  (ECF

20   No. 34 at 30.)

21        On April 2, 2008, plaintiff filed a reasonable modification or accommodation request,

22   form CDC 1824, in which he claimed he was being denied effective communication by the denial

23

24   _____

     [5]  Defendants are correct that the court is not required to ferret out evidence from the entire record

25   to support plaintiff's arguments.  <u>See</u>, e.g., <u>Dennis v. BEH-1, LLC</u>, 520 F.3d 1066, 1069 n.1 (9th
     Cir. 2008) ("We will not manufacture arguments for an appellant . . . .  'Judges are not like pigs,

26   hunting for truffles buried in briefs.'") (internal quotation marks and citations omitted); <u>Corely v.</u>

27   <u>Rosewood Care Ctr., Inc. of Peoria</u>, 388 F.3d 990, 1001 (7th Cir. 2004) ("[W]e will not root
     through the hundreds of documents and thousands of pages that make up the record here to make

28   [plaintiff's] case for him.")  However, given the complicated procedural history of this case, the
     undersigned believed it helpful to set forth the relevant evidence submitted by plaintiff.

of sign language classes.  (ECF No. 34 at 34.)  Plaintiff was interviewed by defendant Kahle, who

found:

> Mr. Kahle, principal, interviewed [plaintiff] in the library.  He said this CDC 1824 was not necessarily directed at education although he corresponded with the Developmental Placement Program ["DPP"] teacher Mr. Hudson.  [Plaintiff] was informed that the DPP is there to accommodate students with sight and hearing impairments.  [Plaintiff] asked about the sign language training given to inmate teacher aids.  [Plaintiff] was informed that these inmates are trained so that they can effectively communicate and tutor students with sight and hearing impairments.

(ECF No. 34 at 35.)  On April 22, 2008, defendant Kahle denied plaintiff's request on the basis

that "the DPP was established to accommodate students with sign and hearing impairments to

provide them with equal opportunity to earn a GED or a vocational trade."  (ECF No. 34 at 35.)

On April 25, 2008, plaintiff filed an administrative appeal stating he had been denied his

right to effective communication without sign language and sought access to same.  (ECF No. 34

at 36.)

On May 13, 2008, nondefendant Kathleen Dickinson, on behalf of defendant Knowles,

denied plaintiff's appeal, finding that plaintiff "is able to hear well enough to carry a normal

conversation."  (ECF No. 34 at 39.)  In addition to identifying the issue as whether or not CMF

was denying plaintiff sign language classes, Dickinson noted that plaintiff "predicts he may

become completely deaf from a future operation on his ear" and that plaintiff "wants to learn sign

language in the event he becomes deaf."  (ECF No. 34 at 39.)  Dickinson determined that DPP is

for students who are legally blind and deaf and not a program to enroll anyone outside of

education.  (Id.)

On June 20, 2008, plaintiff filed a request for third level review, objecting that he had not

predicted that he may become completely deaf from a future operation on his ear, and that he did

not state that he wants to learn sign language in the event he becomes deaf.  (ECF No. 34 at 37.)

Plaintiff stated that "he does not hear well enough to carry a normal conversation."  (Id.)  Plaintiff

also objected to Dickinson's notation that plaintiff has a high school diploma.  Rather, plaintiff

noted that his CDC 128-B dated February 26, 2008 shows that he received his GED, and that his

Disability Placement Program Verification form ("DPPV"), CDC-1845, shows that he is hearing

1    impaired.

2          On June 30, 2008, defendant Grannis denied plaintiff's third level appeal, finding:

> Sign language classes are not required by the Armstrong Remedial
> Plan (ARP) for inmates who want to learn how to sign.  Pursuant to
> the ARP II.F, "The Department shall provide reasonable
> accommodations or modifications for known physical or mental
> disabilities of qualified inmates/parolees.  The Department shall
> consider, on a case-by-case basis, accommodations for
> inmates/parolees with impairments that are temporary in nature.
> Examples of reasonable accommodations include special equipment
> (such as readers, sound amplification devices, or Braille materials),
> inmate or staff assistance, bilingual or qualified sign language
> interpreters, modifying work or program schedules, or grab bars
> installed for mobility impaired inmates who require such (including
> mobility impaired inmates whose disability does not impact
> placement)."  As stated in the ARP, sign language interpreters are
> available when necessary to ensure effective communication.
> [Plaintiff] is deemed hearing impaired not impacting placement
> (DNH) with the use of hearing aids and is able to effectively
> communicate with hearing aids.  [Plaintiff] is being provided with
> reasonable accommodation for his hearing impairment.  After
> considering the evidence and arguments herein, it has been
> determined that staff acted appropriately on [plaintiff's] request.

14   (ECF No. 34 at 43.)

15         On July 29, 2008, Chief Psychologist, MHSDS, D. Silbaugh, Ph.D., issued the first level

16   appeal response to plaintiff's appeal, #CMF-M-08-2209, in which plaintiff claimed that he was

17   being denied his rights to be treated psychiatrically for his disorders.  (ECF No. 34 at 23.)  In the

18   first level appeal response, Dr. Silbaugh noted that during the July 24, 2008 interview with S.

19   Morgenstern, Ph.D., plaintiff clarified that he was interested in a class for American Sign

20   Language.  (ECF No. 34 at 23.)  In the findings, Dr. Silbaugh noted that plaintiff does not sign,

21   but that "[e]ffective communication during the interview was established through writing."  (Id.)

22   Dr. Silbaugh found that recent neuropsychological testing reflected mild neuropsychological

23   impairment, which was probably not caused by the 2002 brain surgery, and that the surgery does

24   not account for plaintiff's behavioral problems.  (ECF No. 34 at 23.)  "The neuropsychological

25   report recommended MHSDS groups, for which the ability to sign would likely be a significant

26   benefit."  (Id.)

27   ////

28   ////

1    Dr. Silbaugh also found:

2    You [plaintiff] were also told that it would be determined whether there is Sign Language training available for inmates at CMF, and

3    if so, whether you qualify.  Although access to Sign Language training is outside the scope of the MHSDS program, consultation

4    with DDP instructor Mr. Hudson in the CMF education department revealed that, if UCC assigns you to an ABE# or GED program,

5    you could be eligible to be pulled out for half a day each day that you attend classes to participate in the DPP program.  This program

6    provides sign language training and support for the educational program to which inmates are assigned.  Mr. Hudson clarified that

7    the Armstrong decision governing ADA services does not mandate such instruction, but that CMF currently provides it as a support to

8    the education program for inmates who need this support.

9    (ECF No. 34 at 24.)

10   Dr. Silbaugh determined that "it does appear likely that participation in CCCMS groups

11   would assist [plaintiff] in managing [his] current psychological and behavioral difficulties, that

12   Sign Language training would be helpful to [plaintiff] in participating in groups," that plaintiff

13   qualified for CCCMS groups in Unit IV, and recommended that plaintiff work with his CCCMS

14   case manager to determine which groups might be most useful," and to work with plaintiff's

15   "CCI to pursue enrollment in the education program, to participate in sign language training."

16   (ECF No. 34 at 24.)  Thus, Dr. Silbaugh concluded that plaintiff's "eligibility for Sign Language

17   training has been clarified."  (Id.)

18   In the August 21, 2008 second level appeal response to appeal log #CMF-M-08-2209, Dr.

19   J. Bick found that "the written notes from [plaintiff's] first level appeal interview with Dr.

20   Morgenstern, on July 24, 2008, were reviewed.  This transcript indicates that effective

21   communication was used, and that [plaintiff] appeared to make [himself] quite clear and to

22   understand the conversation."  (ECF No. 34 at 25.)

23   The Developmental Placement Program ("DPP") is there to accommodate students with

24   sight and hearing impairments.  (ECF No. 34 at 35.)  Inmate teacher aids given sign language

25   training so that they can effectively communicate and tutor students with sight and hearing

26   impairments.  (ECF No. 34 at 35.)  DPP established to accommodate students with sight and

27   hearing impairments to provide them with equal opportunity to earn a GED or a vocational trade.

28   (ECF No. 34 at 35.)

28

Plaintiff provided copies of medical records from brain resections performed on November 5, 2008, and October 31, 2008. (ECF No. 103 at 7-12.) Plaintiff also provided a copy of medical records from his July 30, 2009 fall in the prison shower. (ECF No. 103 at 14-18.) Plaintiff has bilateral carpal tunnel syndrome (ECF No. 34 at 49), and claims it is painful to write for prolonged periods (ECF No. 1 at 14).

On February 2, 2009, the ADA Coordinator addressed plaintiff's request for accommodation at plaintiff's April 28, 2009 Board of Prison terms hearing. (ECF No. 23 at 9.) In pertinent part, the coordinator recounted plaintiff "need[ed] help to hear[]; hearing aids and an assistive listening device," and noted plaintiff was issued hearing aids, an elevator pass, and a vest. (ECF No. 23 at 9.) Plaintiff was encouraged to wear his hearing aids and informed that an assistive listening device would be available at the hearing. (Id.)

Plaintiff provided a declaration signed on March 17, 2009, by inmate Michael Beers, who states he completed beginning sign language class at CMF on August 19, 2003, and appended a copy of his certificate. (ECF No. 34 at 46-47.) Plaintiff provided his own undated declaration in which he swears that the Board of Prison Terms recommended that plaintiff seek out self-help programs such as AA and NA. (ECF No. 34 at 101.)[6]

On December 8, 2010, Dr. Jarom Daszko and Chief Medical Officer Dr. Nicolas Aguilera, Jr., issued plaintiff a permanent medical chrono, stating in pertinent part that plaintiff "is deaf in the right ear, sound distortion in the left ear. With tone sensitivity. Unable to tolerate loud tones." (ECF No. 206-1 at 2.)

On November 4, 2011, plaintiff was issued a DPPV form, checking the box:

> Permanently Deaf/Hearing Impaired -- DPH

> Must rely on written communication, lip reading or signing as residual hearing, with assistive devices, will not enable them to hear, understand or localize emergency warnings, or public address announcements.

---

[6] Plaintiff also provided a document entitled "Declaration of Tom Lobue," but the document is not signed under penalty of perjury and Mr. Lobue does not swear that his statement is true and correct. (ECF No. 34 at 103.)

29

(ECF No. 206-1 at 3.)  Under Section G, Effective Communication Factors, Dr. Daszko marked

the box "communications with written notes," and added the following written notes:

"ineffective communication.  Deaf right ear, sound distortion in left ear.  Requires effective

communication in writing."  (ECF No. 206-1 at 3.)

On April 10, 2013, plaintiff was issued a DPPV form, checking the box:

> Permanently Deaf/Hearing Impaired -- DPH
>
> Must rely on written communication, lip reading or signing as residual hearing, with assistive devices, will not enable them to hear, understand or localize emergency warnings, or public address announcements.

(ECF No. 206-1 at 3.)  Under the Section G, Effective Communication Factors, Dr. James marked

the box "communications with written notes," and added the following written notes:  "Requires

effective communication in writing."  (ECF No. 206-1 at 4.)  On May 4, 2013, Associate Warden

Vincent Cullen issued a permanent chrono for an elevator pass, noting that plaintiff "is deaf in his

right ear.  With mix[] word sounds and tone sensitivity in his left ear.  Needs effective

communication in writing."  (ECF No. 206-1 at 5.)

On August 18, 2014, plaintiff completed a request for interview at CHCF, addressed to

Associate Warden Facio, providing a copy of defendants' request to continue a settlement

conference, claiming that plaintiff was to be provided with sign language training, but that since

Facio was unable to provide such training, and no one was interviewing for the job position,

plaintiff should be transferred back to CMF where sign language training is provided.  (ECF No.

206-1.)  On August 21, 2014, Correctional Officer Mayoya responded that "we are still in the

process to obtain a sign language interpreter, until then if you prefer to transfer to CMF you need

to inform your counselor of your need to transfer."  (ECF No. 206-1.)

On April 17, 2012, plaintiff provided a declaration by Amy Hansen, who claims that on

April 17, 2012, while working with plaintiff's counsel, she called the Prison Law Office, and a

woman named "Eddie," informed her that the Prison Law Office employs 12 attorneys and 6

legal assistants, and that they represent 150,000 inmates in California.  (ECF No. 166 at 2.)

////

1    E. <u>Defendant Warden Knowles</u>

2         It is undisputed that defendant Knowles did not review plaintiff's appeal, which was

3    signed on the warden's behalf by nondefendant Kathleen Dickinson, and the warden was not

4    made aware of plaintiff's request for sign language training.  In his pro se opposition, plaintiff

5    acknowledges defendant Knowles' declaration to that effect, but contends that Knowles is in

6    charge of the oversight of the prison as well as the actions of his subordinates.  (ECF No. 143 at

7    9.)

8         The Civil Rights Act under which this action was filed provides as follows:

9              Every person who, under color of [state law] . . . subjects, or causes
              to be subjected, any citizen of the United States . . . to the
10             deprivation of any rights, privileges, or immunities secured by the
              Constitution . . . shall be liable to the party injured in an action at
11             law, suit in equity, or other proper proceeding for redress.

12

13   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

14   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u>

15   <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978) ("Congress did not intend § 1983

16   liability to attach where . . . causation [is] absent."); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976) (no

17   affirmative link between the incidents of police misconduct and the adoption of any plan or policy

18   demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another

19   to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an

20   affirmative act, participates in another's affirmative acts or omits to perform an act which he is

21   legally required to do that causes the deprivation of which complaint is made." <u>Johnson v. Duffy</u>,

22   588 F.2d 740, 743 (9th Cir. 1978).

23        Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

24   their employees under a theory of respondeat superior and, therefore, when a named defendant

25   holds a supervisorial position, the causal link between him and the claimed constitutional

26   violation must be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979)

27   (no liability where there is no allegation of personal participation); <u>Mosher v. Saalfeld</u>, 589 F.2d

28   438, 441 (9th Cir. 1978) (no liability where there is no evidence of personal participation), <u>cert.</u>

31

1    <u>denied</u>, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of

2    official personnel in civil rights violations are not sufficient.  <u>See</u> <u>Ivey v. Board of Regents</u>, 673

3    F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of personal

4    participation is insufficient).

5         Plaintiff adduced no evidence demonstrating a link or connection between defendant

6    Knowles and plaintiff's claims in this action.  Rather, in his opposition, plaintiff clarified that his

7    allegations against defendant Knowles were based on a theory of respondeat superior, which are

8    insufficient.  Accordingly, defendant Knowles is entitled to summary judgment.

9         F.  <u>Plaintiff's Equal Protection Claim</u>

10        "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

11   'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a

12   direction that all persons similarly situated should be treated alike."  <u>City of Cleburne, Tex. v.</u>

13   <u>Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).  <u>See also</u> <u>Lee v. City of Los Angeles</u>, 250

14   F.3d 668, 686 (9th Cir. 2001) (same).  To prevail on an equal protection claim the plaintiff must

15   first establish that the defendant acted with an intent or purpose to discriminate against him based

16   upon membership in a protected class.  <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003);

17   <u>Lee</u>, 250 F.3d at 686.  Second, under the "class-of-one theory," if the challenged action does not

18   involve a suspect classification, a plaintiff may establish an equal protection violation by showing

19   that similarly situated individuals were intentionally treated differently without a rational basis for

20   the disparate treatment.  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (equal

21   protection claim by plaintiff-homeowner who was required to provide 33-foot easement when

22   other Village property owners were required to provide 15-foot easement).  Thus, to establish an

23   equal protection violation, plaintiff must show that he "has been intentionally treated differently

24   from others similarly situated and that there is no rational basis for the difference in treatment."

25   <u>Olech</u>, 528 U.S. at 564 ("class of one" equal protection claim requires arbitrary discrimination).

26        Plaintiff argues that other, non-hearing impaired inmates were permitted to attend sign

27   language classes.  However, defendants adduced evidence that the only non-deaf inmates allowed

28   to attend such classes were those inmates with prison jobs that required sign language skills.

1   Plaintiff does not hold such a position.  Thus, plaintiff was not similarly-situated to these non-

2   deaf inmates.  Plaintiff claims that inmate Michael Beers, allegedly a non-hearing impaired

3   inmate, was allowed to take sign language courses.  But plaintiff does not demonstrate that Beers

4   was not a legally deaf inmate or that Beers was not assigned a prison job that required sign

5   language skills, and inmate Beers' declaration does not address either issue.

6         As set forth above, CMF provides sign language classes for inmates who are legally deaf

7   or who hold prison jobs that require sign language skills, such as a teacher's aide.  Defendants

8   argue that there was a rational basis for such classification, because sign language classes were

9   provided only to inmates who needed them to communicate, i.e. were legally deaf or required

10   sign language skills to work in their prison job.  Defendants adduced evidence that sign language

11   classes were not generally available to inmates who wanted to learn sign language due to

12   budgetary constraints.  Plaintiff adduced no evidence to refute such rational basis, other than to

13   argue it would be cheaper to provide plaintiff with sign language classes rather than to litigate the

14   instant action.  The restrictions as set forth by defendants provide a rational basis for the

15   difference in treatment.

16         But even if the record established differential treatment, plaintiff fails to allege facts

17   demonstrating that defendants Kahle, Gonzalez or Grannis acted with the requisite intent to

18   discriminate.  To state a cognizable civil rights claim for violation of the Equal Protection Clause,

19   plaintiff "must show that the defendants acted with an intent or purpose to discriminate against

20   the plaintiff based upon membership in a protected class."  Barren v. Harrington, 152 F.3d 1193,

21   1194 (9th Cir. 1998), cert. denied, 525 U.S. 1154 (1999).  A discriminatory purpose or intent

22   means that the decisionmaker selected a particular course of action because of, rather than in spite

23   of, its adverse effect upon an identifiable group.  See Lee v. City of Los Angeles, 250 F.3d 668,

24   687 ((9th Cir. 2001) (citing Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 279

25   (1979)).  Here, plaintiff claims defendants discriminated against him by denying him sign

26   language classes based on his hearing impairment, but plaintiff presents no evidence which shows

27   that any defendant acted with discriminatory intent.  Aside from plaintiff's unsubstantiated

28   allegations, there is no evidence in the record to indicate any defendant acted with a

1  discriminatory intent.  Accordingly, defendants are entitled to summary judgment on this claim.

2        G.  Plaintiff's ADA/RA Claim

3             i.  ADA/RA Standards

4        Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, et seq.

5  ("ADA"), provides that "no qualified individual with a disability shall, by reason of such

6  disability, be excluded from participation in or be denied the benefits of the services, programs, or

7  activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C.

8  § 12132.

9        Although 42 U.S.C. § 12132 does not expressly provide for reasonable accommodations,

10  the implementing regulations provide that "[a] public entity shall make reasonable modifications

11  in policies, practices, or procedures when the modifications are necessary to avoid discrimination

12  on the basis of disability, unless the public entity can demonstrate that making the modifications

13  would fundamentally alter the nature of the service, program, or activity."  28 C.F.R.

14  § 35.130(b)(7).  The duty to provide "reasonable accommodations" or "reasonable modifications"

15  for disabled people under Title II of the ADA arises only when a policy, practice or procedure

16  discriminates on the basis of disability.  Weinreich, 114 F.3d at 979.  Thus, plaintiff bears the

17  burden of establishing the existence of specific reasonable accommodations that the defendant

18  public entity failed to provide.  See id. at 978.

19        To prove that a public program or service violated Title II of the ADA,[7] the plaintiff must

20  show:  (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to

21  participate in or receive the benefit of some public entity's services, programs, or activities; (3)

22  the plaintiff was either excluded from participation in or denied the benefits of the public entity's

23  _____

24  [7] The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"), see Pub. L. No. 110-325, 122 Stat. 3553 (2008).  One of the main purposes of the ADAAA was to repudiate the Supreme Court's narrowing interpretations of the term "disability" in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), and the scope of protection intended to be afforded by the ADA in Toyota Motor Mfg. v. Williams, 534 U.S. 184 (2002).  The ADAAA, which took effect on January 1, 2009, does not apply retroactively.  See Becerril v. Pima County Assessor's Office, 587 F.3d 1162 (9th Cir. 2009).  Thus, the undersigned applies the law as it existed in 2008, when defendants made the challenged decisions.  See Johnson v. Board of Trustees of the Boundary County School Dist. No. 101, 666 F.3d 561, 564 n.2 (9th Cir. 2011).

services, programs or activities, or was otherwise discriminated against by the public entity; and

(4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); see also Duvall v. County of Kitsap, 260

F.3d 1124, 1134 (9th Cir. 2001).  The elements of an RA claim are "'materially identical to the

model for the ADA, except that it is limited to programs that receive federal financial assistance -

- which the [California] prison system admittedly does. . . .'"  Armstrong v. Davis, 275 F.3d 849,

862 n.17 (9th Cir. 2001).  Thus, plaintiff's ADA and RA claims are addressed together.  See

Duvall, 260 F.3d at 1135.

Damages are not available for a violation of Title II of the ADA or the RA absent a

showing of discriminatory intent by the defendant.  See Ferguson v. City of Phoenix, 157 F.3d

668, 674 (9th Cir. 1998).  To show discriminatory intent, a plaintiff must establish deliberate

indifference by the public entity.  Duvall, 260 F.3d at 1138.  Deliberate indifference requires:  (1)

knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act

upon that likelihood.  Id. at 1139.  The first prong is satisfied when the plaintiff identifies a

specific, reasonable and necessary accommodation that the entity has failed to provide, and the

plaintiff notifies the public entity of the need for accommodation or the need is obvious or

required by statute or regulation.  Id.  The second prong is satisfied by showing that the entity

deliberately failed to fulfill its duty to act in response to a request for accommodation.  Id. at

1139-40.  The entity's duty is to undertake a fact-specific investigation to gather from the

disabled individual and qualified experts sufficient information to determine what constitutes a

reasonable accommodation, giving "primary consideration" to the requests of the disabled

individual.  Id.  The second prong is not satisfied if the failure to fulfill this duty to accommodate

is a result of mere negligence, such as "bureaucratic slippage," or where the entity simply

"overlooked" a duty to act.  Id.

### ii.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223

35

1  (2009) (internal quotation marks omitted).  "For a constitutional right to be clearly established, its

2  contours must be sufficiently clear that a reasonable official would understand that what he is

3  doing violates that right.  This is not to say that an official action is protected by qualified

4  immunity unless the very action in question has previously been held unlawful; but it is to say

5  that in the light of pre-existing law the unlawfulness must be apparent."  Hope v. Pelzer, 536 U.S.

6  730, 739 (2002) (citation omitted).

7        "Although earlier cases involving 'fundamentally similar' facts can provide especially

8  strong support for a conclusion that the law is clearly established, they are not necessary to such a

9  finding."  Id. at 741.  Accordingly, qualified immunity will be denied if a case involves "the mere

10 application of settled law to a new factual permutation."  Porter v. Bowen, 496 F.3d 1009, 1026

11 (9th Cir. 2007).  However, even if the violated right was clearly established, it may be difficult for

12 an officer to fully appreciate how the legal constraints apply to the specific situation he or she

13 faces.  Motley v. Parks, 432 F.3d 1072, 1077 (9th Cir. 2005) (en banc) (noting that qualified

14 immunity will "shield[] an officer from trial when the officer reasonably misapprehends the law

15 governing the circumstances she confronted, even if the officer's conduct was constitutionally

16 deficient" internal quotation marks omitted)), overruled on other grounds by United States v.

17 King, 687 F.3d 1189 (9th Cir. 2012) (en banc).).  "Under such circumstance, if the officer's

18 mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity

19 defense."  Motley, 432 F.3d at 1077 (brackets and internal quotation marks omitted).  In essence,

20 "[o]fficers are entitled to qualified immunity unless they have been given fair notice that their

21 conduct was unreasonable in light of the specific context of the case."  Winterrowd v. Nelson,

22 480 F.3d 1181, 1186 (9th Cir. 2007) (internal quotation marks omitted).

23        Prior to Pearson, 555 U.S. at 223, the Supreme Court mandated a two-step framework for

24 deciding the issue of qualified immunity.  First, courts were to decide whether "[t]aken in the

25 light most favorable to the party asserting the injury, do the facts alleged show the officer's

26 conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If the court

27 answered this question affirmatively, the court would then ask whether the constitutional right

28 was clearly established.  Id.  In Pearson, the Supreme Court reconsidered the two-step framework

36

1    and held that courts are not required to address whether there was a constitutional violation before

2    deciding whether the constitutional right at issue was clearly established.  Id., 129 S. Ct. at 818.

3    However, the Supreme Court also stated that courts may continue to follow the two-step

4    framework as a matter of discretion.  Id.

5                    iii.  Discussion

6           Here, the court has not found, and plaintiff has not cited, any case which stands for the

7    proposition that an inmate who is not legally deaf must be provided sign language classes during

8    his incarceration.  As noted by defendants, prisoners have no substantive constitutional right to a

9    prison job or educational opportunities.  See Baumann v. Arizona Dep't of Corrections, 754 F.2d

10   841, 846 (9th Cir. 1985) (no constitutional right to jobs and educational opportunities); Rizzo v.

11   Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (no liberty or property interest in vocational training).

12   Thus, a reasonable person in each defendant's position could reasonably believe that denying sign

13   language classes to an inmate who is not legally deaf, and who was not assigned a prison job that

14   required sign language skills, was lawful.  Reasonable persons could disagree on this issue;

15   plaintiff believes it no hardship to allow him to attend sign language classes; defendants, faced

16   with budgetary constraints and large numbers of inmates with competing interests, may not be

17   inclined to grant exceptions to policies, particularly where accommodations for effective

18   communication for hearing impaired inmates were litigated in Armstrong.  In addition, the very

19   nature of plaintiff's hearing deficit is somewhat murky, possibly stemming from his brain

20   resections.  Typically correctional officers are not privy to an inmate's confidential medical

21   records, and plaintiff adduced no evidence demonstrating that any defendant was aware of

22   plaintiff's nuanced hearing deficits.  But in any event, the instant claims are not based on Eighth

23   Amendment medical claims.  Thus, defendants are entitled to qualified immunity on plaintiff's

24   ADA/RA claims.  See Gilmore v. Hodges, 738 F.3d 266 (11th Cir. 2013) (where prison officials

25   failed to provide pretrial detainee hearing aid batteries to an inmate with a serious hearing loss

26   condition, qualified immunity protected the defendants because the seriousness of a hearing loss

27   condition would not necessarily have been obvious to the defendants and there was no prior case

28   law concerning hearing loss and hearing aid batteries or a clearly established, applicable principle

1  from case law to fairly warn the defendants that their actions were unlawful.)

2        Moreover, in the July 28, 2008 appeal response, Dr. Silbaugh noted that DDP instructor

3  Mr. Hudson in the CMF education department "clarified that the <u>Armstrong</u> decision governing

4  ADA services does not mandate such instruction [sign language classes]."  (ECF No. 143 at 17.)

5  Rather, CMF provided sign language classes as a support to the education program.  (<u>Id.</u>)  Review

6  of the ARP reveals no specific provision for sign language classes even for legally deaf inmates.

7  (ECF Nos. 31-2, 31-3, *passim*.)  The guidelines contained in the ARP were a court-approved plan

8  of action regarding access to services and programming for qualified hearing impaired inmates in

9  the CDCR.  Thus, defendants are also entitled to qualified immunity because they could have

10  reasonably believed that denying plaintiff access to sign language classes was consistent with the

11  ARP in <u>Armstrong</u>.  <u>See</u> <u>Krug v. Lutz</u>, 329 F.3d 692, 699 (9th Cir. 2003) (prison officials acting

12  under provisions of a consent decree were entitled to qualified immunity).

13        H.  <u>Prospective Injunctive Relief</u>

14        In the August 6, 2010 findings and recommendations addressing defendants' motion to

15  dismiss, the court noted that plaintiff is a member of the <u>Armstrong</u> class, and found that

16  plaintiff's claims for prospective injunctive relief must be pursued through <u>Armstrong</u>:

> 17  The remedial order entered in <u>Armstrong</u> was based on findings of
> 18  violations of the ADA and the RA. Ex. 1 to Defendants' Request
> for Judicial Notice, filed June 17, 2009.  The court ordered remedial
> plan in <u>Armstrong</u> covers hearing impaired inmates and contains
> 19  specific provisions for "reasonable accommodation" to "ensure
> equally effective communication with staff, other inmates, and
> 20  where applicable, the public," as well as "communication
> implicating due process and delivery of health care." Ex. 3 to
> 21  Defendants' Request for Judicial Notice, <u>Armstrong v. Davis</u>, Court
> Ordered Remedial Plan, Amended January 3, 2001, at 4. Thus,
> 22  plaintiff's request for injunctive relief under the ADA and the RA
> to accommodate his hearing impairment must proceed through the
> 23  remedial process in <u>Armstrong</u> and his claims for injunctive relief
> under those statutes must be dismissed.  <u>See</u> <u>Crawford v. Bell</u>, 599
> 24  F.2d 890, 892-93 (9th Cir. 1979).

25  (ECF No. 91, adopted by district court September 7, 2010, ECF No. 95.)

26        Under the doctrine of the law of the case, "a court will not reexamine an issue previously

27  decided by the same or higher court in the same case."  <u>Lucas Auto Eng'g, Inc. v. Bridgestone/</u>

28  <u>Firestone, Inc.</u>, 275 F.3d 762, 766 (9th Cir. 2001).  The court may exercise its discretion to depart

1    from the law of the case only if one of these five circumstances is present:  (1) the first decision

2    was clearly erroneous; (2) there has been an intervening change of law; (3) the evidence is

3    substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would

4    otherwise result.  United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).  It is an abuse of

5    discretion for a court to depart from the law of the case without one of these five requisite

6    conditions.  Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993).

7         On July 15, 2013, the Ninth Circuit issued its opinion in Pride, clarifying that "where a

8    California prisoner brings an independent claim for injunctive relief solely on his own behalf for

9    specific medical treatment denied to him, Plata does not bar the prisoner's claim for injunctive

10   relief."  Pride, 719 F.3d at 1137, citing Brown v. Plata, 131 S. Ct. 1910 (2011) (class action

11   addressing prisoner's health care in California prisons).  "Individual claims for injunctive relief

12   related to medical treatment are discrete from the claims for systemic reform addressed in Plata."

13   Pride, 719 F.3d at 1137.

14        The undersigned has read the parties' conflicting views as to whether Pride applies.

15   However, for the following reasons, the undersigned declines to recommend that the district court

16   revisit the prior denial of plaintiff's request for prospective injunctive relief.

17        First, the Armstrong class action specifically addressed the appropriate constitutional

18   remedy for the accommodation of hearing impaired inmates for effective communication under

19   the ADA and RA.  It is undisputed that plaintiff is hearing impaired and is a member of the

20   Armstrong class.  As set forth above, the ARP requires the CDCR "to ensure that prisoners . . .

21   with disabilities . . . receive effective communication regarding accommodations."  Armstrong v.

22   Brown, No. 94-2307 (Order filed January 13, 2012).  Thus, the relief sought in Armstrong,

23   accommodations for effective communication, is the same relief sought by plaintiff.  Moreover,

24   the provision of medical care is distinctly different from the policy questions governed by the

25   ADA and RA.  Plaintiff fails to demonstrate why he, as an individual, should be permitted to

26   pursue ADA/RA claims regarding accommodation for effective communication outside the class

27   in Armstrong.  While it appears that plaintiff firmly believes that he is entitled to an exception to

28   the CMF policy, primarily based on his own unique medical condition, accommodations for

1  effective communication under the ADA/RA for hearing impaired inmates fall squarely within

2  the <u>Armstrong</u> class action.  Moreover, as evidenced by the parties' arguments, the application of

3  <u>Pride</u> to the instant action is not so clear as to be considered "an intervening change in the law,"

4  and the September 7, 2010 order dismissing plaintiff's prospective injunctive relief claims is not

5  clearly erroneous, even taking into account the subsequent decision in <u>Pride</u>.

6       Second, plaintiff failed to adduce evidence demonstrating that he is required to have sign

7  language training for effective communication.  Rather, the evidence demonstrates that plaintiff is

8  provided effective communication through writing.  Certainly, sign language training would assist

9  plaintiff, as evidenced by Dr. Silbaugh's response.  However, whether as a policy matter plaintiff

10  must be provided sign language classes is governed by the ARP.

11       Third, it was not until long after this action was filed, on November 4, 2011, that medical

12  professionals specifically articulated plaintiff's hearing difficulties as sound distortions in his

13  non-deaf ear on a DPPV form.  (ECF No. 206-1 at 3.)  But even that form states that plaintiff

14  "requires effective communication in writing," not sign language classes.  (<u>Id.</u>)  Despite

15  plaintiff's unsupported arguments to the contrary, plaintiff adduced no evidence that any of the

16  named defendants were aware of the nuanced defects in plaintiff's hearing, or that defendants

17  Kahle or Gonzalez were aware that plaintiff could not carry on a conversation.[8]

18       Fourth, plaintiff's August, 2014 request for interview suggests that prison officials at

19  CHCF acknowledge that plaintiff is now entitled to attend sign language classes, or are willing to

20  allow plaintiff attend sign language classes.  However, it appears that the issue at CHCF is that

21  there is no sign language interpreter to hold such a class at CHCF.  (ECF No. 206-1 at 1.)

_____

22  [8]  Indeed, the reviewing physician in the Federal Receiver's report noted that plaintiff "appears to

23  converse with staff and other inmates without problem.  Dr. Gabriel Williams (Physical Medicine and Rehabilitation physician documented 10/5/09 that [plaintiff] 'has very astute receptive

24  cognitive skills, executive planning with attention to details and consequences.  Able to describe thought process but because of stuttering and decreased speed appears less functional.'"  (ECF

25  No. 168-1 at 4.)  During the March 25, 2010 Interdisciplinary Team meeting it was noted that "in this meeting [plaintiff] was able to comprehend and respond to spoken word from men and

26  women, persons with accents, those sitting close by and further away, and those speaking louder and softer."  [The reviewing physician has] spoken to numerous physicians providing direct care

27  to [plaintiff] and they state he has no receptive or expressive language difficulties that require sign language."  (ECF No. 168-1 at 4.)

28

1    Nevertheless, the question of the availability of such interpreters would fall squarely within the

2    ARP.

3          Finally, and importantly, plaintiff has now been transferred to CHCF, and the named

4    defendants no longer have the ability to accommodate plaintiff's request for sign language

5    classes.  "When an inmate challenges prison conditions at a particular correctional facility, but

6    has been transferred from the facility and has no reasonable expectation of returning, his claim is

7    moot."  Pride, 719 F.3d at 1138 (citing Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991)).

8    That is, an inmate's claim for prospective injunctive and declaratory relief is moot when he "no

9    longer is subjected to [the allegedly unconstitutional] policies."  Johnson, 948 F.2d at 519; see

10   also Dilley v. Gunn, 64 F.3d 1365, 1372 (9th Cir. 1995) (concluding that prisoner's claim that he

11   might be transferred back to first prison in the future was too speculative).  Plaintiff has submitted

12   evidence that suggests prison officials at CHCF were willing to allow plaintiff to attend sign

13   language classes.  (ECF No. 206-1 at 1.)  Moreover, plaintiff adduced no evidence demonstrating

14   that he filed a request for sign language classes after Dr. Silbaugh issued her response.  Plaintiff

15   argues that he has been denied sign language classes at all four prisons where he has been housed

16   during the pendency of this litigation, but plaintiff provided no evidence showing such denials at

17   CHCF or Old and New Folsom.  In light of the evidence that was submitted from CHCF (ECF

18   No. 206-1 at 1), it is not clear that he would be denied access to sign language classes at all other

19   institutions.

20         For all of these reasons, the undersigned declines to recommend that the district court

21   revisit the denial of plaintiff's request for prospective injunctive relief.

22   V.  Plaintiff's Motion for Summary Judgment

23         On April 18, 2014, plaintiff filed a motion for partial summary judgment.  (ECF No. 199.)

24   On May 8, 2014, defendants filed an opposition.  By order filed November 19, 2014, plaintiff's

25   motion was deemed timely filed, and further leave to file a reply was granted.  (ECF No. 203.)

26   No further reply by plaintiff was filed.

27         In order to narrow issues for trial, plaintiff seeks the court's determination that plaintiff is

28   a person with a qualifying disability within the meaning of the ADA and RA, that plaintiff is

41

1    incarcerated under the sole control of the CDCR, and that plaintiff is a member of the <u>Coleman</u>

2    and <u>Armstrong</u> classes.  (ECF No. 199 at 3.)  In support, plaintiff provided a copy of class

3    counsel's December 4, 2009 letter to the court confirming that plaintiff is a class member in both

4    <u>Coleman</u> and <u>Armstrong</u> class actions.  (ECF No. 200-1.)  Plaintiff argues that CDCR records

5    show that plaintiff "has been treated for seizure disorders secondary to two brain resections for

6    meningiomas, difficulty with hearing and word processing subsequent to his brain tumors,

7    photophobia, and a variety of other problems."  (ECF No. 199 at 3.)

8            Defendants oppose plaintiff's motion for partial summary judgment on four grounds:

9            First, plaintiff's motion is untimely because it was filed after the April 17, 2014 deadline

10    set by the court in its March 6, 2014 order (ECF No. 197).  Second, plaintiff failed to support the

11    motion with a statement of undisputed facts, in violation of Local Rule 260(a), or to point to any

12    specific evidence in the record as required by Rule 56(c)(1) of the Federal Rules of Civil

13    Procedure.  (ECF No. 201 at 3.)  Defendants contend that plaintiff's general reference to CDCR

14    records and "the court's record," is insufficient.  Moreover, defendants argue that because

15    plaintiff has the burden of proof at trial on the issue of whether he is an individual with a

16    qualifying disability, plaintiff cannot meet such burden by pointing to the absence of facts in the

17    record to support this contention.  (ECF No. 201 at 4.)

18            Third, plaintiff provides no basis for how adjudication of the three issues would "narrow

19    issues for trial."  Defendants note that there is a split of authority as to whether a party can

20    independently move for partial summary judgment on parts of a claim instead of a whole claim.

21    (ECF No. 201 at 5.)  Defendants point to two scenarios where courts have found such requests to

22    be appropriate:  (a) where "the fact or issue to be adjudicated is potentially case dispositive," or

23    (b) "whether significant time needed for trial would be saved by early resolution of an issue, thus

24    narrowing the issues to be litigated and conserving judicial resources, even if the issue is not

25    potentially case dispositive."  (ECF No. 201 at 5.)  Here, defendants argue, the issues are not

26    complex and do not include numerous claims.  The fact that plaintiff is a prisoner is not disputed

27    and would not be a triable issue at trial.  Defendants contend that the second issue, whether

28    plaintiff is an individual with a qualifying disability under the ADA and RA, is not dispositive of

1   plaintiff's ADA/RA claims because there are additional required elements that plaintiff fails to

2   address.  Finally, defendants argue that plaintiff's third issue, whether he is a member of the

3   Armstrong class, is relevant to, but not dispositive of, the injunctive relief claim.  Moreover,

4   defendants note that they do not dispute that plaintiff is a member of the Armstrong class; indeed,

5   defendants argued that plaintiff's injunctive relief claim is barred because he is such a member.

6   Defendants argue that plaintiff's membership in the Coleman class is not relevant to this action.

7           Fourth, defendants contend that plaintiff's request on the issue of whether plaintiff is a

8   "qualified individual with a disability," is too vague and creates triable issues of fact precluding

9   summary judgment because plaintiff fails to specifically identify the disability at issue in this

10  action.  Rather, defendants note that plaintiff references his seizure disorders, photophobia, and

11  other medical issues not clearly related to the issue of whether defendants denied plaintiff access

12  to sign language classes because he is hearing impaired.  (ECF No. 201 at 8.)

13          Despite being granted an extension of time to do so, plaintiff did not file a reply.

14          The undersigned finds defendants' arguments to be well-taken.  Plaintiff's motion was

15  untimely filed and fails to comply with Local Rule 260(a) and Rule 56(c)(1).  Moreover,

16  resolution of the issues addressed by plaintiff, two of which are undisputed, would not narrow

17  issues for trial or conserve judicial resources.  Thus, plaintiff's motion for partial summary

18  judgment should be denied.

19  VI.  Leave to Amend

20          This action proceeds on plaintiff's 2008 original complaint.  Thus, plaintiff has not had an

21  opportunity to amend his pleading.  While a court should freely give leave to amend when justice

22  requires, Fed. R. Civ. P. 15(a)(2), leave need not be granted where amendment:  "(1) prejudices

23  the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is

24  futile."  AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006)

25  (citation omitted).  The proposed addition of new claims unrelated to the claims and defenses in

26  the original complaint may be grounds for denial of leave to amend.  See, e.g., Morongo Band of

27  Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (denial of leave to amend not abuse

28  of discretion where proposed new claims would have "greatly altered the nature of the litigation"

1  and required defendants to undertake "an entirely new course of defense"); Jackson v. Bank of

2  Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990) (affirming denial of leave to amend where additional

3  claims "advance different legal theories and require proof of different facts").

4        Here, counsel was appointed on October 13, 2011, and did not seek leave to amend. It has

5  now been over six years since plaintiff filed his pro se complaint, and over three years since

6  counsel was appointed for plaintiff; allowing plaintiff to amend at this late date would produce an

7  undue delay in litigation, as well as prejudice to defendants. Moreover, in light of plaintiff's

8  transfer to CHCF, as well as the lack of evidence demonstrating that a medical professional or

9  other expert finds that plaintiff is required to have sign language for effective communication, it

10  is not clear that plaintiff could state a cognizable Eighth Amendment claim in this action.

11  Although plaintiff often refers to his medical condition, he did not allege that defendants or

12  medical professionals at CMF were deliberately indifferent to his serious medical needs in

13  violation of the Eighth Amendment by denying him access to sign language classes. In addition,

14  the administrative appeal only addressed plaintiff's request for sign language classes submitted to

15  the education department; plaintiff included no allegations concerning alleged deliberate

16  indifference to his serious medical needs. Thus, any potential Eighth Amendment claims are

17  likely unexhausted. It may be that prison officials subsequently identified nuanced hearing

18  deficits that might support an Eighth Amendment claim; however, the evidence submitted

19  suggests that the earliest such date might be 2011, when plaintiff's DPPV form was changed to

20  reflect that effective communication by writing was required. For these reasons, it appears that

21  amendment in this 2008 case would be futile. Therefore, the undersigned does not recommend

22  that plaintiff be granted leave to amend.

23  VII. Motion to Strike

24        On January 23, 2015, defendants filed a motion to strike the documents submitted by

25  plaintiff on January 16, 2015, objecting that plaintiff failed to lay a foundation, the documents

26  contain inadmissible hearsay and have not been authenticated. However, because such

27  documents could be admissible at trial if authenticated, such exhibits were considered to the

28  extent relevant. Defendants' motion to strike is denied.

VIII.  Conclusion

Accordingly, IT IS HEREBY ORDERED that defendants' motion to strike (ECF No. 210) is denied; and

IT IS RECOMMENDED that:

1.  Defendants' motion for summary judgment (ECF No. 198) be granted; and

2.  Plaintiff's motion for summary judgment (ECF No. 199) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 6, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/tuns3176.msj

45